DEBORAH M. SMITH
Acting United States Attorney

JOSEPH W. BOTTINI
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: joe.bottini@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:06-cr-010-JWS |
| | ) |
| Plaintiff, | ) **GOVERNMENT'S** |
| | ) **OPPOSITION TO** |
| vs. | ) **DEFENDANT** |
| | ) **PATTERSON'S MOTION** |
| JOSHUA MICHAEL PATTERSON, | ) **TO EXCLUDE IN COURT** |
| | ) **IDENTIFICATION** |
| Defendant. | ) |
| | ) |

COMES NOW the United States of America, by and through counsel, and responds in opposition to defendant Patterson's motion to exclude in court identification of the defendant which allegedly is the product of impermissibly suggestive identification procedures.

**I.      INTRODUCTION** [1]

At the outset, the government submits that this motion should be more properly presented as a motion in limine to the trial judge to exclude specific testimony rather than as a pre-trial motion to suppress or exclude evidence. Accordingly, this motion should be deferred until trial.

In the event that the court chooses to address this issue as a pre-trial motion to suppress evidence, the government responds as follows.

**A.      The Robbery of the Credit Union 1 Branch**

On Wednesday, January 11, 2006, at approximately 3:20 p.m., the Credit Union 1 (CU1) branch located at 3500 Eide St., in Anchorage was robbed by a man armed with a handgun. Witnesses said the robber brandished a large silver revolver with a long barrel and described him as a white male, approximately 6'0" to 6'2" tall, medium weight, clothed in a dark colored hooded sweatshirt, dark colored jeans, "winter" boots, and wearing a dark colored knit cap pulled down just above his eyes with a blue bandana around his face.

In response to the robber's demands for money, one of the victim tellers removed a stack of currency from her drawer which included an Electronic

---

[1] The facts set forth in this section are a proffer of the facts the government would expect to develop at an evidentiary hearing on this motion.

Transmitting Device (ETD). The teller placed the ETD in the middle of the stack of bills and placed the money on the counter in front of her. The robber walked down to the teller's station, took the money she had placed on the counter, and placed the stack in a plastic bag he was holding.

The robber forcibly took a total of $3,216.90 in U.S. currency from the victim tellers and yelled "have a nice day" as he fled the CU1branch.

### B. The Robber (Joshua Patterson) is Tracked to 727 O Street in Anchorage and is Apprehended

Shortly after the robbery, Anchorage Police Department (APD) units began receiving a signal from the activated ETD in the Northwest Anchorage area. APD also confirmed that the CU1 branch on Eide St. had just been robbed.

An APD Officer tracked the signal to a residence located at 727 O Street in Anchorage. As the officer passed the residence, he observed two individuals walking into the house. The officer noted that the ETD signal was extremely strong as he pointed a receiver unit directly at the residence.

A number of other APD officers then arrived on the scene at 727 O Street to assist. From the outside of the residence, the officers were able to observe at least two people inside. One of these individuals (later identified as a juvenile accomplice of the defendant) was standing inside a window. The juvenile saw the

officer and immediately put his hands up in the air. Another subject, later identified as defendant Joshua Patterson, then walked into the room behind the juvenile.

The officers told Patterson and the juvenile to come outside and they complied. The officers noted that Patterson was wearing a dark colored knit cap. As Patterson and the juvenile walked backwards towards the officers (in response to the officers' demands) Patterson stated words to the effect of, "it's not like we're robbers". Patterson and the juvenile were then handcuffed and placed into separate patrol cars.

### C.   The Protective Sweep of the Residence

Officers then entered the residence to conduct a protective sweep. During the sweep, officers attempted to locate the live electronic tracking device (ETD) in order to turn the transmitter off.[2] As an officer removed the ETD (which was concealed within a pile of U.S. currency in a backpack found in the laundry room of the house), he also observed a loaded large caliber silver revolver and some

---

[2] The live transmitter needed to be deactivated due to public safety concerns. Had the tracking device been allowed to continue transmitting a signal, it would have interfered with law enforcement's ability to track another ETD signal should another bank robbery occur.

clothing inside the backpack. The officer unloaded the firearm (removing four live rounds) for safety purposes.

### D. The "Showup"

FBI Special Agents had initially responded to the robbery scene at the Credit Union 1 branch. They then proceeded to 727 O Street with a CU1 member (a customer) who had been present in the branch during the robbery. While Patterson was committing the robbery, the customer noted specific details about Patterson's actions, together with his clothing and appearance. The customer observed the robber as a white male who was waiving a silver revolver around while he demanded "100's and 50's" from the tellers. The customer noted that the robber had what appeared to be a plastic bag in his other hand and had a blue bandana over the bottom half of his face. He also noted that the robber was wearing a dark colored knit cap. As the robber walked away from the second teller station, he walked right past the customer. The customer was close enough that he could see the man's eyebrows and thus distinguish the color of his hair.

The customer was brought to 727 O Street by the FBI agents approximately 45 minutes after the robbery. Patterson was removed from an APD patrol car and the witness confirmed that Patterson was the individual who had robbed the credit union.

II. **ARGUMENT**

    A. **The "Show Up" Procedure used here was not Impermissibly Suggestive**

A "show-up" is necessarily more suggestive than a lineup or photo lineup because the suspect is the only person presented for identification. On the other hand, returning a suspect to the scene of a crime shortly after its commission to determine whether eye-witnesses identify him as the perpetrator permits the witnesses to make the determination while the image of the perpetrator is still fresh in their minds. See, Russell v. United States, 408 F.2d 1280, 1284 (1969)). In addition, the "showup" process may lead to the expeditious release of innocent suspects. United States v. Gaines, 450 F.2d 186, 197 (3d Cir. 1971); Russell v. United States, supra, 408 F.2d at 1284.

The test to be applied in determining whether due process is denied by introduction of proof of the results of a pretrial "show-up" is the same as that applied to other identification procedures, namely, whether in the "totality of circumstances" the process was so suggestive as to create a very substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 196-201(1972).

Here, although the opportunity of the witness to observe the defendant during the robbery was brief, the "show-up" occurred within approximately 45

minutes. The witness was close enough to Patterson during the robbery that he could distinguish the color of his eyebrows and hair despite the fact that Patterson had the lower half of his face concealed. The witness was thus able to identify Patterson by distinctive characteristics of his general appearance.

Due process does not require the suppression of all in-court identifications following unnecessarily suggestive pretrial identification procedures. <u>United States v. Field</u>, 625 F.2d 862 (9th Cir.1980). Rather, the determination the court must make is whether, in light of the totality of surrounding circumstances, the pretrial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968). "It is the likelihood of misidentification which violates a defendant's right to due process ...." <u>Neil v. Biggers</u>, <u>supra</u>, at 198. Thus, even unnecessarily suggestive pretrial procedures do "not violate due process so long as the identification possesses sufficient aspects of reliability." <u>Manson v. Brathwaite</u>, 432 U.S. 98, 106 (1977).

In <u>Neil v. Biggers</u>, <u>supra</u>, at 382, the Supreme Court set forth certain factors to be considered by determining whether identification testimony possesses sufficient indicia of reliability to justify its admission at trial: The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of

attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation.

Here, the witness was very close to Patterson during the robbery and was obviously paying attention. His prior description of the robber (before seeing Patterson at the "showup") was very accurate. He did not hesitate or equivocate in identifying Patterson at the "showup", which took place approximately 45 minutes after the robbery.

### III. CONCLUSION

The "showup" procedure employed here was suggestive, no doubt. All such procedures necessarily are. It was not impermissibly suggestive however and the defendant's motion to exclude in court identification by the "showup" witness must be denied.

RESPECTFULLY SUBMITTED this 13th day of February, 2006, at Anchorage, Alaska.

                                                 DEBORAH M. SMITH
                                                 Acting United States Attorney

                                                 s/ Joseph W. Bottini
                                                 Assistant U.S. Attorney
                                                 Federal Building & U.S. Courthouse
                                                 222 West Seventh Avenue, Rm 253

Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: joe.bottini@usdoj.gov

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing was sent electronically to Sue Ellen Tatter on February 10, 2006.

  s/ Joseph W. Bottini